The PRESIDENT
The first objection is, that Donaldson’s purchase from Cox was void, as being contrary to the act to prevent the buying of pretenseo titles. This law prohibits the purchasing of latent titles in order to disturb the possessions of others. But it was never intended to prevent a person in possession from confirming and strengthening that possession by purchasing the rights of others.
Donaldson having lawfully acquired the possession under his purchase from Wilcox, might without violating the statute make a contract with Cox for the securing of that possession. A man sued in an ejectment may defend the suit, and nevertheless agree to purchase the title of the plaintiff in case he should prove successful.
It was next contended, that the forfeiture made void all mesne sales by Wilcox or Cox. But if land he forfeited for non-payment of quitrents, or for want of cultivation, still, if those acts be performed before the land is petitioned for, it is saved. If Donaldson had purchased absolutely of Cox, he might have dismissed the petitions, taken conveyance from Wilcox, paid the quitrents, and improved the land, and would then have been safe under Wilcox’s patents, though a forfeiture had been incurred. The rule applies thus. Cox recovers, and obtains a lapse patent. This shall relate to the date of the original x'patent, and avoid by priority all mesne grants from the crown, this has often been so adjudged, in disputes about priority, between two patents with interfering bounds.
In April 1772 the petitions were heard, and the lands were recovered. Although the evidence will not warrant us in charging Donaldson with fraud in this transaction, yet he was deceived in relying upon his own testimony, instead of the evidence of other wit *376 nesses, to prove payment of the quitrents. He was adjudged an interested witness, and in consequence of it, the land was lost! Had the facts, as they really existed, been proved, the decision would have been otherwise— being recovered in consequence of a mistake, Wilcox has a good ground of equity against Cox and Donaldson.
The effect of a petition and certificate is not to vest an absolute and indefeasible estate in the person who obtains it, but it gives him a right to purchase that particular piece of land, in preference to all other citizens, but upon condition of paying the consideration money within six months. The right then, which Cox acquired, was not absolute, but conditional: it was to depend upon his perfecting his title within a limited time. This right he assigned to Donaldson, and he might lawfully do so — but the condition passed with it, and Donaldson was bound to perform it — it is objected that the caveat was entered against Cox, instead of Donaldson, the purchaser. But the purchase was a matter in pais; and it does not appear that Wilcox had notice of it. The summons was served on Cox, who must be presumed to have given notice to Donaldson, the private purchaser. But what are the effects of a caveat? to prevent the emanation of a patent, not to set one aside. And if the General Court 1783 had been informed that the patent had issued, however improperly, they would not have heard the caveat, or given a decision which have been vain in its effect, since a patent issued in consequence of their judgment, would not at law overreach the one to Donaldson in 1774. But this was denied at the bar. — It was contended, that the patent in 1784 has relation to those issued to Wilcox in 1764. But the counsel forgot, that Donaldson’s patent in 1774 has relation to the same source, and priority of title will draw to it, priority of relation.
The remedy then was in Chancery to repeal the patent of 1774 as surreptitiously obtained whilst the caveat was depending, aud to be relieved against the forfeiture adjudged in 1772, when, by mistake, the plaintiff was deprived of an opportunity of making that defence which ought to have saved his lajid.
*On this ground, I should have no difficulty in decreeing the land to the plaintiff, if it remained in the hands of Donaldson, and had not been sold by the plaintiff ; or decreeing thepurchase money and interest (the land having been sold by him ) for which he should have a lien upon the land itself.
But this is upon a supposition that he or his representatives were parties, and that the case appeared as it now does. But here is a train of examination, by which the moral character of a man long since in his grave is called in question, and the interest of his family affected, without affording to his family an opportunity of defending either— this can never be right, and either justifies the decree of dismission without prejudice, or suggests an opinion that the cause was not ripe for a hearing, until the bill had been amended and the representatives made parties : in which case the plaintiff must have begun de nove.
If Calloway had been such a purchaser, as that the land itself in his hands, was not bound to answer the purchase money, the dismission should have been final ; since in that case, it would be unreasonable to keep him in Court merely to be a witness of a contest between others. If he be such a purchaser, as that the lien upon the land passed with it, and created an obligation upon him to pay the money in the stead of Donaldson, then Donaldson’s representatives shoul$ have been made parties ; because, being liable, either to Wilcox or Calloway, they ought to have had an opportunity of contesting the claim, or if not, it was proper that the bill should have been dismissed without prejudice.
This brings us to the case of Mr. Collo-way.
The rule, caveat emptor, applies only to purchasers of defective legal titles. A purchaser of the legal title is not tobe affected by any latent equity, whether founded on trust, fraud or otherwise, of which he has not actual notice, or which does not appear in some deed necessary in the deduction of the title, so as to amount to constructive notice. In these cases of notice, he will take the estate subject to the equity in the same manner as the person, from whom he purchased, had it.
Out of this principle has grown another rule, that a purchaser entitled to this protection, must be a compleat purchaser, by having a conveyance, and having also paid his purchase money before he has notice; for, if he receive that notice before either of these acts are perfected, he ought to stop, until the equity is enquired into, or he will be bound by it.
*Callo way states himself to have been a purchaser in 1776, for a valuable consideration, without notice of any claim of the plaintiff until the year 1782. This allegation is not disproved, nor is there any evidence of improper conduct on the part of Calloway. But in his answer, he neither ascertains what was the purchase money, nor at what time he paid it. Speaking of the purchase he says, “ it was for valuable consideration.” He afterwards states, that the plaintiff did not bring his suit until Donaldson had removed away, (without saying when that was, and it might have been after 1782, when he had notice) with a good estate and A4-000 received from him for the land— thereby conveying an idea that the money was then paid. — -Whether this was really the fact, and that the removal was after notice ; or that the payment was before the removal; or that removal before notice, and the inaccuracy was produced by inattention in drawing the answer, is doubtful; it might have been explained in his answer to an amended bill, if that mode had been adopted. In that way, the plaintiff must make a new case, founded on his claim to the purchase money and interest, and insist that he has a lien *377 for that upon the lands in the possession of Calloway.
But this claim is disavowed by the present bill — the plaintiff denying- the agreement to sell, for the sake of his claim to the land— that new case, he may make under the decree of dismission without prejudice and therefore this court approve the decree and affirm it.